IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES of AMERICA                                            PLAINTIFF/RESPONDENT

V.              No.  5:05-CR-50043-JLH
                No.  5:07-CV-05180-JLH

JOSE CARDONA-SALDANA                                                DEFENDANT/PETITIONER

REPORT AND RECOMENDATION

Before the court is the Petitioner's Motion to Vacate, Set Aside, or Correct a Sentence by a person in Federal Custody under 28 U.S.C. Section 2255 (Doc. 46) filed October 12, 2007. The Plaintiff has filed its Response (Doc. 49) on November 15, 2007. The Petitioner did not file a Reply.

A hearing was conducted on April 24, 2008. At the hearing the Petitioner, Jose Cardona-Saldana testified as did Sergeant David Jones, Special Agent Eric Watson and Attorney Robert Klock.

**Background:**

On October 21, 2005, the petitioner, Jose Cardona-Saldana (hereinafter "Cardona"), was arrested by officers with the DEA and Rogers Police Department after selling approximately two ounces of methamphetamine to a Confidential Informant while under police surveillance. (Pre-Sentence Investigation Report, hereinafter "PSR"¶¶ 5-6) The methamphetamine proved to be a total of 51.19 grams of a mixture of methamphetamine. (PSR ¶ 9)

On November 17, 2005, Cardona was named in a one-count Indictment filed by a grand

jury in the Western District of Arkansas. (Docket Entry #6) The Indictment charged Cardona with knowingly distributing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (PSR ¶ 1; Docket Entry #6) On November 29, 2005, Cardona appeared before the Magistrate for Arraignment and pled not guilty. (PSR ¶ 3; Docket Entry #7)

      Cardona subsequently negotiated a Plea Agreement with the Government wherein Cardona agreed to plead guilty to the charge set forth in the Indictment in exchange for the Government's agreements to not recommend a specific sentence, to not object to an acceptance of responsibility reduction, and to move for the additional one point of acceptance responsibility, if applicable. (PSR ¶ 4; Docket Entry #7, Plea Agreement ¶ 1 and ¶¶ 15-17) On February 21, 2006, Cardona appeared with retained counsel Robert D. Klock before the Honorable Jimm Larry Hendren, Chief United States District Judge for the Western District of Arkansas, for his Change of Plea Hearing. At the hearing, a Plea Agreement was presented to the Court wherein Cardona acknowledged that by pleading guilty to the charge, he faced a statutory mandatory minimum sentence of 5 years imprisonment and a statutory maximum of 20 years imprisonment. (Plea Agreement ¶ 7) The Plea Agreement also set forth that the Agreement did not promise Cardona a specific sentence, that the Guidelines were advisory and not mandatory, and that Cardona's relevant conduct could be raised by the Government and considered by the District Court at sentencing. (Plea Agreement ¶¶ 11-13) The Plea Agreement also contained a provision wherein the Government acknowledged that it agreed not to object to a reduction in Cardona's sentence below the statutory mandatory minimum, pursuant to the "safety valve" provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, in the event that Cardona qualified for such a reduction. (Plea Agreement ¶ 8)

Cardona further stated that he understood that by pleading guilty, he would be serving at least 5 years but no more than 20 years in prison. (AT pp. 5-6) A factual basis for the plea was read. Cardona acknowledged that he sold 51.18 grams of mixture methamphetamine. Cardona then pled guilty to the charge. (AT pp. 9-10) The district Court accepted Cardona's guilty plea and ordered a Pre-Sentence Investigation Report. (PSR ¶ 4)

On July 3, 2006, Cardona's revised Pre-Sentence Investigation Report was issued. The PSR assigned a Base Offense level of 26 pursuant to U.S.S.G. § 2D1.1(c)(7)(accountability for at least 50 grams but less than 200 grams of mixture methamphetamine). (PSR ¶ 15) After a total of 3 points were deducted for acceptance of responsibility (PSR ¶¶ 21-22), Cardona's Total Offense Level was 23. (PSR ¶ 23) With no criminal history points, the advisory guideline range of imprisonment was 46-57 months. (PSR ¶ 44) However, because the offense of conviction called for a statutory mandatory minimum of 60 months (pursuant to 21 U.S.C. § 841(b)(1)(B)), the recommended advisory guideline range was determined to be 60 months. (PSR ¶ 44; § 5G1.1(b)(applicable guideline range may not be less than any statutorily required minimum sentence)) Defense Counsel for Cardona advised that he had no objections to the PSR, other than to correct the spelling of Cardona's name. (PSR Addendum dated July 3, 2006)

On July 14, 2006, Cardona appeared for his Sentencing Hearing. At the hearing, Cardona stated that he was still satisfied with the service and advice of his attorney. (AT p. 16) Cardona's attorney spoke on Cardona's behalf and stated that Cardona had a substance abuse problem which transferred into drug dealing only after his mother in El Salvador began needing money to pay for medical bills resulting from for a leg operation. Cardona's attorney asked for leniency on the basis that Cardona was a substance abuser without much education and with no criminal

history, who could benefit from rehabilitation but whose activity with dealing drugs was never intended to be ongoing. (AT pp. 20-21) Cardona stated that he was sorry for what he did and that he only did it to help out his parents in El Salvador. (AT pp. 21-22) In response to the District Court's questioning, Cardona stated that he did have a brother and a sister, but they either weren't able or weren't willing to help their parents. (AT p. 22) The District Court then stated as follows:

"Okay. Well, I have trouble accepting that. If you had gotten into this and didn't have a problem yourself, I might - might believe that more than I do, but the report indicates to me that you've used marijuana and methamphetamine in the past, and that your lawyer argues that you need to have treatment for it, so it may be possible, I suppose, that you started selling to try to get money to help your mother, but I think it's far more likely that you were selling to get money to feed your habit. If you have a problem with drugs to the extent that you are desperate for treatment, as you attorneys says you are, I'm a lot more inclined to think that might have been a motivating reason for it other than just the altruistic motive of trying to help your mother. But, at any rate, I'm not sure it matters one way or the other because ,as you know, Mr. Klock, this is a mandatory minimum of sixty months. I don't have any choice, in light of that statutory, mandatory minimum but to impose the sixty months. So that's what the Court will be obliged to do, to order Mr. Cardona to be imprisoned for a period of sixty months, and to follow that with a period of four years of supervised release..." (AT pp. 22-23) The District Court also fined Cardona $1000 and imposed a Special Assessment of $100. (AT pp. 23-24)

Cardona subsequently appealed his sentence to the Eighth Circuit Court of Appeals. Defense Counsel filed a brief under Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18

L.Ed.2d 493 (1967), stating his opinion that there were no non-frivolous issues to appeal, and moved to withdraw. Cardona filed a pro se supplemental brief. The Eighth Circuit upheld Cardona's sentence, concluding "that there are no non-frivolous issues for appeal." United States v. Cardona-Saldana, 226 Fed.Appx. 635, 2007 WL 1662054, *1 (8th Cir. 2007) The Court stated that "[c]ounsel notes in his Anders brief that his client is dissatisfied with the length of his sentence. The sentence, however, is the statutory minimum for the offense." Id. (*citing* 21 U.S.C. § 841(b)(1)(B)(viii); United States v. Davidson, 437 F.3d 737, 741 (8th Cir.2006) (finding statutory minimum sentence not unreasonable)). The Court further noted that "Cardona-Saldana seems to argue in his pro se supplemental brief that his trial counsel was ineffective, but such a claim should be raised, if at all, in a 28 U.S.C. § 2255 motion." Id.

On October 12, 2007, Cardona filed his § 2255 Petition. (Docket Entry #47) In it, he claims that defense counsel was 1) "ineffective in his representation" of Cardona; 2); ineffective for failing to seek a sentence below the mandatory minimum pursuant to the "safety valve" provisions of 18 U.S.C. § 3553(f); and 3) ineffective for being unprepared or inadequately prepared for Cardona's court proceedings.

**Discussion:**

**Ground One**:

**Counsel Erroneously Advised Petitioner To Tell The Court About**

**A Purported Drug Use, In Order To Receive One Year Jail Credit Drug Program.**

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). To establish a claim of ineffective assistance of counsel, Cardona must satisfy the two-part test set forth in *Strickland*

*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. *see also, i.e. United States v.Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir.2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense) Also, to the extent that Cardona's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997)

The Petitioner alleged in his petition and testified at the hearing that he never had a drug problem and that his attorney advised him to tell the court that he had a drug problem.  His attorney disputed the Petitioner's statement and stated that he obtained knowledge of the Petitioner's drug problem from the Presentence Report.

The Presentence Report, dated June 1, 2006, did state that "[D]efendant admitted to the past use of marijuana and methamphetamine.  He states he first used marijuana at age 18 and used on a weekly basis.  Cardona does not believe he has a problem with marijuana, but does believe his methamphetamine use is a problem.  He states he first used meth about 2 years ago and continued the use on a daily basis of approximately 1 gram daily.  He states he needs help for methamphetamine use." (Court's Exhibit #1, under seal, paragraph 36)

The Petitioner's attorney stated to the court at the sentencing hearing that the Petitioner "has acknowledged that he already was consuming drugs, and in that sense, already did have a substance abuse problem..." (Defendant's Exhibit #1(Appeal transcript) page 20. The Petitioner's attorney also asked the court to "consider recommending in its judgment that he receive some kind of treatment for this substance abuse, one that is referred to in the Pre-sentence Report. He was consuming drugs on almost a daily basis at one point, and we feel this would be helpful for his ultimate rehabilitation." (Defendant's Exhibit #1(Appeal transcript) page 21).

The Petitioner's allegation that his attorney had persuaded him to make a false representation to the court is not credible in light of the Presentence Report and the statement that the Petitioner had made to the Presentence officer.

When the Petitioner was questioned by the court concerning his attorney's statement to the court the Petitioner did not dispute what his attorney has stated to the court. The Petitioner stated that "I just want to say that I'm very sorry for what I did , and that what I did I did because of the love I had for my mother. And I'm – I had just started. I hadn't been selling drugs for very long, and I just did it to try to help out my parents in El Salvador." (Defendant's Exhibit #1(Appeal transcript) page 21).

The court, while having no objection, refused to make any recommendation for counseling, leaving the matter to the Bureau of Prisons. (Defendant's Exhibit #1(Appeal transcript) page 27).

In order to establish that he was prejudiced by his counsel's deficient performance, Cardona must establish that counsel's conduct rendered the result of the proceeding unreliable, and a "necessary condition for establishing prejudice is to show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Becht, 403 F.3d at 545 (citing Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) and Schumacher, 83 F.3d at 1037).

Even if Petitioner's attorney had been misinformed about the availability of drug rehabilitation programs for illegal immigrants there is no showing that the Petitioner was prejudice by that misinformation.

## Ground Two:

## Counsel Failed To Seek For A Downward Departure From The Mandatory Minimum Sentence.

The Petitioner contends in Ground two that his attorney did not "initiate or make any motion" for a safety valve reduction pursuant to 18 U.S.C., section 3553(f).

"The 'safety valve' provision permits a district court to impose on a drug defendant a more lenient sentence within the otherwise applicable guidelines range if certain conditions are met." In order to qualify for safety-valve relief, a defendant must show, by a preponderance of the evidence, that:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement. 18 U.S.C. § 3553(f); U.S. v. Soto  448 F.3d 993, 995 (C.A.8 (Neb.),2006)
It is undisputed that the Petitioner met the requirements of (1) through (5).

To qualify for the safety valve exception, a defendant carries the burden of demonstrating that "he has truthfully provided to the Government all information regarding the relevant crime before sentencing.", *United States v. Velasquez* 141 F.3d 1280, 1283 (8th Cir.1998); see also U.S.S.G. § 5C1.2(5); *U.S. v. Santana* 150 F.3d 860, 864 (C.A.8 (Minn.),1998)

The Petitioner implied in his Petition that he was not aware of the safety valve provision and not provided an opportunity to participate in a safety valve interview. (Doc. 47, p. 3) The evidence presented at the hearing is that the Petitioner's attorney sought not once but twice the opportunity for his client to satisfy the requirements of 18 U.S.C., section 3553(f).  Mr. Klock testified that he explained the safety valve provision to his client and then spoke with the AUSA to seek a safety valve interview.  An interview was set up between Mr. Klock, Detective David Jones and the Petitioner.  During the interview the Petitioner gave information that he obtained his drugs from a male co-worker.  Detective Jones testified that the Petitioner only disclosed the first name of the individual that supplied the drugs to the Petitioner. The Petitioner claims he disclosed the first and last name to the police.   The Petitioner stated that the individual had since moved and he had no way to contact him.  Both the detective and Petitioner's attorney had information that the source of the drugs was a female and not a male.  Detective Jones also testified that he felt that, because of the quantity of drugs involved, that the Petitioner would have

9

more information about his source.  The Detective stated to the Petitioner that he did not believe him and the interview was ended.

A short time later the Petitioner's attorney did set up another interview which was conducted by Special Agent Eric Watson.  Mr. Klock stated that he again explained the need for Petitioner to be truthful with the police and Mr. Klock felt that the Petitioner would give a different version of events to the police in the second interview.  Special Agent Watson had intelligence that the source was female and that the Petitioner had been involved in at least one other transaction.  The Petitioner gave the same story to Special Agent Watson that he had given to Sgt. Jones and the interview was terminated.  Mr. Klock explained to the Petitioner that the police did not believe the story that he was telling them.  Special Agent Watson testified that he felt that the Petitioner may have been afraid to divulge the truth because of some harm that would come to him or his family.  The Petitioner denied he was afraid and that he just gave them the information that he was aware of.

A defendant is not entitled to safety-valve relief when he or she just conveys the "basic facts of his [or her] crime." *United States v. Alarcon-Garcia*, 327 F.3d 719, 723 (8th Cir.2003). A defendant must prove "through affirmative conduct, that he [or she] gave the Government truthful information and evidence about the relevant crimes before sentencing." *United States v. Romo*, 81 F.3d 84, 85-86 (8th Cir.1996). "In making its assessment of the truthfulness of a safety valve proffer, the district court is entitled to draw reasonable inferences from the evidence." *United States v. Alvarado-Rivera*, 412 F.3d 942, 948 (8th Cir.2005) (en banc); U.S. v. Soto, Id. 996.

An attorney is under no obligation to undertake an unpromising investigation. *Harvey v.*

*United States*, 850 F.2d 388, 403 (8th Cir. 1988). In order to establish that he was prejudiced by his appellate counsel's deficient performance, Cardona must establish that counsel's conduct rendered the result of the proceeding unreliable, and a "necessary condition for establishing prejudice is to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Becht, 403 F.3d at 545 (*citing Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838 122 L.Ed.2d 180 (1993) and Schumacher, 83 F.3d at 1037). Consequently, counsel is not ineffective for failing to file a motion that would not have succeeded because the petitioner was not actually prejudiced. *Harris v. Housewright,* 697 F. 2d 202 (8th Cir. 1982).

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Rice, 449 F.3d at 897 (*quoting* Strickland, 466 U.S. at 690, 104 S.Ct. 2052).

In this instance there is no reason to believe that the Motion for Safety valve consideration would not have been successful. Both police officers testified that they did not believe that the Petitioner was being forthright with them and the Petitioner's own attorney had information from the Petitioner's girlfriend that he was not being truthful. It would have been possible for the court to believe that the Petitioner was not being truthful concerning his information about the crime and a greater sentence could have been the result.

### Ground Three:

### Counsel was unprepared for Petitioner's Trial Proceeding.

In support of this claim, Cardona states that defense counsel's "inadequate preparation" was evident in his failure to seek a favorable Plea Agreement and in his failure to seek a

6

reduction under the safety valve provisions. (*See* Petitioner's Brief in Support of 2255 Petition at pp. 4-5; 5-9)

In response to Cardona's argument that defense counsel was inadequately prepared for failing to seek a "favorable Plea Agreement", the record in this case conclusively belies this claim. Defense counsel did pursue and did obtain for Cardona a "favorable" Plea Agreement, given that Cardona was able to obtain a sentence at the statutory minimum for his crime, given the amount of methamphetamine he admittedly distributed. *See i.e. United States v. Davidson*, 437 F.3d 737, 741 (8th Cir.2006)(finding statutory minimum sentence not unreasonable)

Where a guilty plea is challenged under the second prong of the Strickland test the "defendant must show that ... he would not have pleaded guilty and would have insisted on going to trial." Id. (*citing* Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985)) In determining whether counsel's conduct was objectively reasonable, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. (*citing* Strickland, 466 U.S. at 689)

Petitioner was ultimately able to secure a sentence of 60 months imprisonment despite facing a statutory maximum of 240 months imprisonment. By pleading guilty, Petitioner was further able to secure the government's promise to not object to a reduction for acceptance of responsibility, and to move for an additional one (1) point for acceptance of responsibility, if applicable.

Petitioner has never contended that he would have gone to trial.  His only contention is that he wanted the court to reduce the time he was sentenced to the Bureau of Prisons.

The Petitioner also contends that in this ground that his attorney was ineffective for

failure to seek the safety valve reduction. That point was addressed in Ground Two.

**Conclusion:**

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. Section 2255, be dismissed with prejudice.

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 2nd day of May 2008

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
UNITED STATES DISTRICT JUDGE